227 P.2d 74

**VANCIL v. ANDERSON.**

No. 7618.

Supreme Court of Idaho.

Jan. 25, 1951.

W. H. Langroise, W. E. Sullivan, and W. B. Bowler, all of Boise, A. D. Foster, Emmett, for appellant.

Donart & Donart, Weiser, C. H. Higer, Emmett, for respondent.

THOMAS, Justice.

Prior to February 2, 1948 Clyde O. Anderson, the appellant, and Lee Owens were the owners and engaged in the operation of the "Cherry Blossom" in Emmett, Idaho. On February 2, 1948 the appellant entered into a written contract of sale of his undivided one-half interest in the business, together with all furniture, fixtures, goods, wares and merchandise, for the sum of $17,500 to Alva H. Vancil, the respondent. The respondent also took an assignment of the leasehold rights of the appellant covering the buildings and lands used in connection with the business and entered into possession of the property and business under the terms of the contract on or about February 2, 1948.

The contract of sale contained a non-competitive covenant in the following language: "It is agreed and understood that the party of the first part shall not engage in any business like or similar to the business of the Cherry Blossom within the County of Gem, State of Idaho, for one year after the date of this contract, either as sole proprietor of such business or as copartner or firm name, or as corporate manager or as employee".

The Cherry Blossom, at the time of the execution of the contract, was conducted as a restaurant, lunch counter, beer parlor, cigar and confectionery store and place in which slot machines were operated, card games were played, and chances on punch boards were sold.

During the months of March, April and May, 1948, respondent and Owens were engaged in remodeling the premises, which included putting in a new lunch counter twice the length of the original counter and adding an extra booth. They also enlarged their facilities by adding an additional room, 25' x 40', connected to the Cherry Blossom. The construction of the addition was commenced early in the month of May, 1948 and completed about the middle of June of the same year, and was thereafter used for card and pool games.

On or about May 20, 1948 the appellant, in some capacity not disclosed by the record, began the operation of a business across the street from the Cherry Blossom under the name of Anderson's Fine Foods, where whiskey, beer and meals were sold, and slot machines operated. No card games were played in Anderson's Fine Foods.

In the spring of 1949 respondent instituted an action against appellant to rescind the contract of purchase and, in the alternative, to recover damages in the sum of $5,000 for a violation of the non-competing covenant contained in the contract of sale. Prior to the trial respondent abandoned the theory of rescission and the issues were joined on the action for damages only.

At the close of respondent's case, appellant moved for nonsuit, which was denied;

whereupon both parties rested without the appellant introducing any evidence.

Verdict was rendered for respondent for $4,000. The appeal is from the ensuing judgment for respondent.

A restrictive covenant, such as contained in the contract under consideration, being reasonable as to time and scope, must be given effect in accordance with the intention of the parties, and they should comply with both the letter and the spirit of the agreement. Under the fair and natural meaning of the language employed in the agreement both the spirit and intention thereof were breached by the appellant. Ryska v. Anderson, 70 Idaho 207, 214 P.2d 874.

In instances where a party sells his business, and, in connection with such sale, agrees that he will not engage in the same or similar business in the same area for a particular and reasonable length of time, it is obviously the intention on the seller's part to sell the good will of the business, even though the contract, as in this instance, fails to expressly mention good will. 24 Am.Jur. 810, § 13; Mahlstedt v. Fugit, 79 Cal.App.2d 562, 180 P.2d 777; Herrington v. Hackler, 181 Okl. 396, 74 P.2d 388.

The evidence clearly establishes that the appellant breached the restrictive covenant with respect to the sale of meals and beer, operation of slot machines, and the impairment of good will.

The appellant's first assignment of error brings before the court the asserted error of the trial court in sustaining respondent's objection to appellant's cross-examination of respondent with respect to the kinds of card games played in respondent's place of business.

In order to prove a breach of the covenant not to engage in competition, it was not necessary that respondent establish the breach by adducing evidence that the appellant sold all the articles in Anderson's Fine Foods establishment that had been sold in the store which he sold to respondent, or engaged in every phase of such business. It was sufficient to show by competent evidence that a substantial and material portion of such articles were being sold by appellant during the period of time restricted by the covenant, in his new store located in the restricted area, to constitute a breach. 36 Am.Jur. § 72, p. 549, note 10. Although cards were played in the Cherry Blossom, no card games were played in Anderson's Fine Foods. There was no competition with respect to card games, and no breach of the non-competing covenant in this respect.

Appellant asserts, in urging that he should have been allowed to cross-examine respondent with respect to the kinds of card games operated in the Cherry Blossom, that if it were revealed from such cross-examination that respondent was operating card games in violation of the gambling laws of this state, the court would refuse to determine the matter, and leave the respondent where it found him at the

beginning of the litigation, on the ground of public policy which precludes a court from lending aid to one who has violated the law. In this respect it must be kept in mind that in order for respondent to prove breach of the non-competing covenant, it was not necessary that he show that the appellant engaged in the operation of card games. In order to prove his case it was not necessary for the respondent to, nor did he, depend upon any illegal acts to maintain his suit; he only sought to recover damages for breach of the non-competitive covenant with respect to the sale of meals and beer, the operation of slot machines and the impairment of good will; the contract on its face was a legal contract, and no contention is made that it contained any illegal features or that it is not supported by adequate and independent consideration; a contract will be enforced even if it is incidentally or indirectly connected with an illegal transaction provided it is supported by an independent consideration so that the plaintiff will not require the aid of the illegal transaction to make out his case. Hoffman v. McMullen, 9 Cir., 83 F. 372; Asher v. Johnson, 26 Cal.App.2d 403, 79 P.2d 457; McConnon v. Holden, 35 Idaho 75, 204 P. 656; 12 Am.Jur. 718, § 211. The appellant did not compete with respondent, plaintiff below, in card games in violation of the non-competing covenant. The respondent did not require the aid of any evidence with reference to card games played in either place of business to make out his case of breach of the non-competing covenant, hence no error was committed in sustaining the objection of respondent to the appellant's cross-examination of respondent with respect to the kinds of card games played in respondent's place of business.

The appellant further assigns as error the action of the trial court in overruling his objection to the respondent's opinion evidence with reference to the percentage that respondent's business would have, in his opinion, increased had respondent's customers not divided their business with that of the appellant. It is urged that it is error to permit the witness Vancil to express his opinion as to the percentage his business would have increased had his customers not divided their business between appellant and himself.

The broad general rule is to the effect that a witness cannot state his conclusion as to the amount of monetary damage that has been sustained by himself or another by reason of the invasion of a legal right, without first testifying to the facts upon which his opinion is predicated. If, on the other hand, testimony is adduced, setting forth some facts upon which the estimate of damages was based, from which the jurors could determine the aggregate damages apart from the conclusions of the witness, such testimony is admissible. The following cases of this court support the general rule: Raide v. Dollar,

34 Idaho 682, 203 P. 469; Roseborough v. Whittington, 15 Idaho 100, 96 P. 437; see also 32 C.J.S., Evidence, Sec. 447(b), page 77.

McGuire v. Post Falls Lumber & Mfg. Co., 23 Idaho 608, 131 P. 654; Kirk v. Madareita, 32 Idaho 403, 184 P. 225, and Cox v. Crane Creek Sheep Co., 34 Idaho 327, 200 P. 678, cited by appellant, as well as McKissick v. Oregon Short Line Railway Co., 13 Idaho 195, 89 P. 629, are not in conflict with, but support this general rule.

Let us now examine the evidence of the respondent with reference to the presence or absence of any facts upon which his opinion evidence might be predicated. He testified that Anderson's Fine Foods commenced business on or about May 20, 1948; that the daily receipts of the Cherry Blossom as disclosed by its books declined abruptly after business was commenced by Anderson's Fine Foods, for the balance of the month of May, 1948, which was before he had completed the remodeling and enlargement of the Cherry Blossom; that the daily receipts for each and every day of the month of May, admitted in evidence from the records of the Cherry Blossom, disclosed that the daily receipts which had averaged in excess of $100 daily up through May 23, 1948, dropped to an average of about $75 a day for the balance of the month of May; that respondent added an addition to the Cherry Blossom which was completed early in the month of June and that in this addition he placed his card tables and added two pool tables, and that the revenues from cards and pool varied from day to day; further evidence was offered by respondent that eighty percent of his customers divided their patronage with Anderson's Fine Foods after such business was opened across the street; that his gross sales for the year were approximately $75,000 and that his net income from the operation of the business for the same period of time was in excess of $14,000; respondent itemized his overhead expenses and testified as to the number of employees on his payroll and their wages, and further testified that an increase in his volume of business from twenty-five percent to forty percent would not result in any increase in his overhead expenses, and that he could have handled forty percent more business with the same number of employees; respondent further testified as to the percent of gross profits realized from the sale of beer and meals; there was also evidence introduced from the books of respondent which reflected his merchandise sales, his sales other than merchandise, and his total sales on a monthly basis for each and every month during the year covered by the non-competing covenant; this evidence with reference to his sales revealed that the receipts on a month to month basis subsequent to May, 1948, showed an increase each and every month over the month of May, 1948.

It is the impairment of good will and the loss of profits resulting from the breach of the restrictive covenant which is the measure of damages; it is not necessary that the entire absence of profits be shown in order to establish that he suffered damages. It is impossible to determine damages in such cases with exactitude and precision, and at most it is difficult to approximate such damages including the value of the good will which is impaired, but, where a foundation has been laid with facts as hereinabove detailed, it would afford a basis for the witness to express an opinion and would also enable the jury to draw its own conclusion and make a rational estimate as to the aggregate damages, if any, suffered, and the opinion of such witness, in the light of such other evidence, is admissible for what it is worth. After all, it is a question for the jury, taking all the surrounding facts and circumstances, including the opinion of respondent, into consideration. The court did not err in overruling the objection to the introduction of the opinion evidence of respondent as to the percentage his business would have increased had his customers not divided their patronage between appellant and respondent.

Further assignments of error have reference to instruction No. 5 given to the jury and to the refusal of the court to give appellant's requested instructions numbers 3, 4, 5, 6, 8 and 11. Instruction No. 5, given by the court, and assigned as error, is as follows:

*"Instruction No. 5.*

"You are instructed that if you find from the evidence that the contract entered into between the plaintiff and defendant has been broken in an manner charged by the complaint filed by the plaintiff and that the plaintiff has been damaged thereby, your verdict should be for the plaintiff for such amount as you may believe from the evidence that the plaintiff has sustained by reason of such breach of the contract by the defendant; it is not necessary that the plaintiff prove the amount of such damages. If the plaintiff proves by a preponderance of the evidence, facts showing that he was so damaged, then the amount of such damages may be determined by you as being the amount of damages which the plaintiff would naturally suffer by reason of such breach."

It is urged that the giving of this instruction constituted error because the instruction, in effect, instructed the jury that it was not necessary that the plaintiff prove the amount of his damages. That portion of the instruction to the effect that it was not necessary for the plaintiff to prove the amount of his damages, when considered in isolation, is misleading and erroneous, but when taken and considered in connection with the remainder of this instruction, as well as other instructions as a whole, as the jury was instructed by the court to do, the error was sufficiently overcome so as no prejudicial error arises; when instruction No. 5 is read and con-

sidered in connection with instructions Nos. 6, 7 and 8, which also treat with the matter of damages and the measure of damages, it is at once obvious that plaintiff must prove damages arising from competition of defendant in violation of the restrictive covenant, in order to warrant a favorable verdict. Under instructions Nos. 6, 7 and 8, the jury was in substance and effect instructed that before it could find for plaintiff it was necessary that it find from a preponderance of the evidence that plaintiff's business suffered a loss of profits by reason of its patrons and customers trading with defendant; that any award of damages must be the natural and proximate result of a breach of the contract by defendant, and that such damages must be limited to the loss established by the evidence as a result of such breach, and must be only the net profits lost by plaintiff during the period of time when defendant was obligated to refrain from engaging in business in competition with plaintiff. The substance of these instructions required plaintiff to prove his damages, if any, arising from the breach of the non-competitive covenant, and, when read and considered together, correctly state the law.

■■■■ Taking up the assignments of error in refusing to give defendant's requested instructions Nos. 3 and 4, which are closely related, we will consider them together. Defendant's requested instruction No. 3 would instruct the jury that plaintiff failed to prove the amount of damages he claimed to have suffered, with reasonable exactitude, and that if the jury should find for plaintiff, only nominal damages should be awarded. Defendant's requested instruction No. 4 would instruct the jury that the proof of loss of profits resulting from a breach of the contract must be shown with a reasonable degree of certainty and exactness, so that the jury could determine the actual damages sustained by plaintiff, and if the plaintiff should fail to prove actual damages, only nominal damages might be awarded. These instructions would require the plaintiff to prove his damages with exactitude and certainty. The court properly refused to give these instructions, as they do not state the correct rule. It is recognized that in such cases damages through loss of profits and impairment of good will are seldom susceptible of accurate proof with any degree of mathematical certainty, and the law does not require such proof. Ryska v. Anderson, supra; Jacob v. Miner, 67 Ariz. 109, 191 P.2d 734; Firestone Tire & Rubber Co. v. Sheets, 178 Okl. 191, 62 P.2d 91.

■■■■ Appellant's requested instruction No. 5 would instruct the jury that even though they should find that both the place of business of plaintiff and defendant handled the same kinds of merchandise, that, in and of itself, would not establish that they were in competition with each other, but that the jury must go further and find from the evidence that the customers of Anderson's Fine Foods were, or would have been, customers of the Cherry

Blossom, and that such customers would have patronized the Cherry Blossom had it not been for the operation of Anderson's Fine Foods, and that the jury must find the actual amount of net profits that plaintiff lost as a result of defendant taking his customers. This requested instruction, in part, is not the law for the same reasons applicable to requested instructions numbers 3 and 4, and for the further reason that it was not necessary, in order to establish the breach or prove the damages arising therefrom, that plaintiff prove that all the customers of defendant were or would have been customers of plaintiff, and would have patronized the place of business of plaintiff if defendant had not entered into business in competition with him, or that plaintiff adduce proof that defendant sold all the articles which plaintiff sold, or that defendant engaged in every phase of the business of plaintiff. It was only necessary that plaintiff show that defendant competed in a material and substantial way. 36 Am.Jur. § 72, p. 549, note 10.

Appellant's instruction No. 6, which the court refused to give, in substance would instruct the jury that the fact that an occasional customer of either the Cherry Blossom or Anderson's Fine Foods was seen in the place of business of the other, would not, in and of itself, amount to proof of competition. This requested instruction is without support in the evidence. There is no evidence in the record that even an occasional customer of Anderson's Fine Foods patronized the Cherry Blossom, or that only an occasional customer of the Cherry Blossom patronized Anderson's Fine Foods. There is evidence in the record, without contradiction, that eighty percent of the customers of the Cherry Blossom divided their patronage with Anderson's Fine Foods. It is not error for the court to refuse to give an instruction where there is no evidence in the record with reference to the subject matter of the instruction. Intermountain Farmers' Equity v. Norris, 39 Idaho 685, 229 P. 745; Powers v. Security Savings & Trust Co., 38 Idaho 289, 222 P. 779.

Defendant's requested instruction No. 8, which was refused by the court, in effect would instruct the jury that if it found from the evidence that defendant had no connection with Anderson's Fine Foods, or, if he did, that Anderson's Fine Foods was not a business competing with the business of the Cherry Blossom, or that plaintiff sustained no loss of profits because of competition from Anderson's Fine Foods, the verdict should be for the defendant. The defendant, as revealed by the evidence, was connected with Anderson's Fine Foods, and there is no evidence to the contrary. That portion of the instruction relating to defendant's connection, or absence of connection with Anderson's Fine Foods, was properly refused, for the reason that there is no evidence in the record that the defendant was not connected with Anderson's Fine Foods, and there is uncontradicted evidence that

he was connected with this business. Intermountain Farmers' Equity v. Norris, supra; Powers v. Security Savings & Trust Co., supra. Furthermore, the substance of this requested instruction, in all other respects, is covered by instructions Nos. 6, 7 and 8. Likewise, defendant's requested instruction No. 11 is also covered by these same instructions given by the court. It is not error for the court to refuse requested instructions which are substantially covered by instructions given. Burns v. Getty, 53 Idaho 347, 24 P.2d 31; Pipher v. Carpenter, 51 Idaho 548, 7 P.2d 589; Douglas v. City of Moscow, 50 Idaho 104, 294 P. 334; Roseborough v. Whittington, supra.

From our examination and consideration of all the instructions given by the court, considered as a whole, and from our examination and consideration of the instructions requested by the appellant and refused, but which were sufficiently covered by the instructions given by the court, no prejudicial error appears in the record as would require a reversal of the judgment.

It is deemed unnecessary to determine or discuss other errors assigned, for the reason that what has been set forth hereinabove disposed of all the necessary aspects of the case.

Judgment is affirmed. Costs to respondent.

GIVENS, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.